GLEN D. CHENOWITH D/B/A RUSSELLVILLE LIVESTOCK SALE v. BANK OF DARDANELLE

5-4304                                    419 S. W. 2d 792

Opinion delivered October 30, 1967

*Laws & Shulze,* for appellant.

*Mobley & Bullock,* for appellee.

CARLETON HARRIS, Chief Justice. Four checks in the amounts of $3,800.00, $3,000.00 (these checks being dated January 13, 1966), $1,242.55 and $155.00 (these checks being dated January 14, 1966) were drawn on the Citizens Bank of Pottsville by Glen D. Chenowith, appellant herein, made payable to Homer Parham. These checks were all deposited in the Bank of Dardanelle by Parham, where he had an account, and were forwarded on to the correspondent bank in Little Rock. When they reached the Pottsville Bank, this bank refused payment, noting insufficient funds on the two larger checks, and "Bank closed for examination" on the two smaller ones. The correspondent bank notified the Bank of Dardanelle by wire or telephone call that the checks were being returned. Thereupon, the Bank of Dardanelle, appellee herein, examined Parham's balance, and found that he had on deposit in excess of $6,800.00; a hold order of $6,800.00 was placed on Parham's account so that when the unpaid checks were returned to Dardanelle, they would be covered.[1] In the meantime, Parham wrote a check to Chenowith, drawn on the Bank of Dardanelle, for $6,800.00,[2] and this check was presented for payment in the Dardanelle Bank *after* the bank had been notified that the $3,800.00 and $3,000.00 checks had been turned down, but before those checks were actually forwarded to the Dardanelle bank. When this $6,800.00 check was presented, the bookkeeper at the Bank of Dardanelle mistakenly believed that the purpose of

[1] The two smaller checks are not affected by the controlling statute in this litigation, and will be treated separately in this opinion.

[2] Both Chenowith and Parham were engaged in the business of the purchase and sale of livestock, and they frequently sold and bought cattle from each other.

the hold order was to cover this $6,800.00 check, and, under this belief, the hold order was removed and the $6,800.00 check was paid. When the two checks (already turned down by the Pottsville bank) arrived at the Dardanelle bank, there were no funds in Parham's account to charge back. A bank employee, not knowing that the hold order had been removed, and that Parham no longer had sufficient funds on deposit to cover a chargeback, mailed both checks to Parham with a notice advising the latter that the two unpaid checks would be charged back against his account. The bank was unable to collect the $6,800.00, and accordingly instituted suit in the Pope County Circuit Court against Parham and Chenowith for the amount of the four checks. At the conclusion of appellee's evidence, appellants moved for a directed verdict, and this motion was denied. At the conclusion of all the evidence, the court again denied a motion for directed verdict, and the case was submitted to the jury. The jury returned a verdict of $4,098.70 against Chenowith, and a like amount against Parham. From the judgment entered in accordance with this verdict, Chenowith brings this appeal. Parham does not appeal from the judgment rendered against him. Three points are alleged for reversal, but since Point 2 controls the litigation, there is no need to discuss the other contentions. Appellant's Point 2 alleges that the court erred in refusing to give a directed verdict for the appellant, at least insofar as the $3,000.00 and $3,800.00 checks are concerned.

This case is governed by the provisions of the Uniform Commercial Code. Ark. Stat. Ann. § 85-3-603 (Add. 1961), *inter alia,* provides as follows:

"(1) The liability of any party is discharged to the extent of his payment or satisfaction to the holder even though it is made with knowledge of a claim of another person to the instrument unless prior to such payment or satisfaction the person making the claim either supplies indemnity deemed adequate by the party

seeking the discharge or enjoins payment or satisfaction by order of a court of competent jurisdiction in an action in which the adverse claimant and the holder are parties. This subsection does not, however, result in the discharge of the liability.

(a) of a party who in bad faith pays or satisfies a holder who acquired the instrument by theft or who (unless having the rights of a holder in due course) holds through one who so acquired it;"

Parham testified that he was notified by John Hamilton, Vice-President of the Dardanelle bank, by phone call that the Chenowith checks were not good, and that something would have to be done about them. Parham stated that he would have to get in touch with Chenowith. Hamilton advised that he (Parham) had around $18,000.00 in the bank, and the banker requested that he be allowed to deduct these bad checks from that amount. Parham approved this procedure, and subsequently received the two checks in the mail. A few days later, Hamilton called back, and told him to come over to the bank. Parham complied with the request. He found Hamilton somewhat upset, the latter stating that the bank examiners would be in, wanting Parham to sign a "paper"; Parham signed a note for something over $11,000.00[3] Parham and Chenowith went back the next day, and according to the former, Hamilton informed him that the amount wasn't as much as originally thought, and had him sign a new note. This note was in the amount of $8,847.55, and included the four checks here involved upon which payment had been refused. Parham insisted that the notes were signed at Hamilton's request. The banker, however, testified to the contrary, i. e., he said that the suggestion had been made by Parham. Hamilton stated that Parham said, "I sure don't want the bank to be in any jam on my account, and I don't want the bank to lose on this. Just let me sign something to take care of it. Just let me sign a

---

[3]There were other checks upon which payment had been refused, besides the four involved in this litigation.

note.'' Whereupon, Hamilton prepared a demand note, which Parham signed. According to the banker, the note was not even filed; he simply ''pitched'' it into a box. When asked what the note was for, Hamilton replied, ''Nothing whatever. It was never recorded in our books at all. The note was not carried through the bank in any way.'' The purpose of obtaining the note is never made clear, though it certainly would appear that it could only have been for the purpose of placing the bank in a position to, at some time in the future, collect its money for the checks that had not been paid. The testimony does not reflect that Hamilton even asked Parham for the checks. Chenowith was present when Parham signed the note.

The note was signed on January 25, and Chenowith testified that, on January 28, he settled the checks with Parham; at that time, Parham returned the checks to appellant. The settlement was reached largely on the basis of the fact that each man owed the other different sums of money for various transactions, and Chenowith stated that, after all credits had been allowed by each, Parham owed him $272.00. Parham's testimony is not at all clear. He first said that they had not settled; he subsequently said that their accounts were settled within a few hundred dollars, not more than $300.00, and if Chenowith said $272.00, that amount was probably correct.

Appellant contended that his liability was discharged under the provisions of § 85-3-603, heretofore quoted, since he fully satisfied the amount of these checks with the holder (Parham). The Circuit Judge, however, denied the motion for directed verdict, because Chenowith was with Parham at the bank when Hamilton advised that the checks were unpaid. This ruling was erroneous. It will be noted that the statute says that the liability of the party is discharged ''even though it is made with knowledge of a claim of another person to the instrument,'' unless the claimant (the bank) supplies indemnity deemed adequate by the party seeking

the discharge (Chenowith) or enjoins payment or satisfaction by court order in an action in which the adverse claimant (Chenowith) and the holder (Parham) are parties. No indemnity was supplied, nor did the bank, in filing its suit, seek an injunction, as provided by the statute. It is also asserted by appellee that Chenowith and Parham were acting in bad faith, *i. e.*, they knew the checks had not been paid at the time they made this settlement. Appellee, in its brief, asserts that Parham was nothing more than a bailee, and his conduct amounted to a conversion of the checks "to his own use or a larceny by bailee, and accepting them with knowledge of the circumstances, Chenowith participated in the conversion or larceny and was nothing more than an accessory thereto."

Under the statute, Chenowith would not have been discharged from liability if he paid or satisfied a holder "who acquired the instrument by theft or who holds through one who so acquired it," but the commissioners' comment with reference to Subsection (1) makes clear that the question of good or bad faith has nothing to do with liability. That comment is as follows:

"Subsection (1) changes the law by eliminating the requirement of the original Section 88 that the payment be made in good faith and without notice that the title of the holder is defective."

Of course, Parham did not steal the check, and it might also be mentioned that the complaint does not charge that Chenowith and Parham entered into a conspiracy to defraud the bank.

Appellee also argues, as a matter of supporting its judgment, that Chenowith and Parham had not completely settled their financial transactions with each other (this contention being made on the basis of Parham's testimony), and since they had not fully settled, Chenowith's liability had not been discharged. We disagree. Whether the entire indebtedness between the men had

been settled is immaterial here, for it is admitted that the checks had been turned over to Chenowith by Parham, who had become the holder,⁴ having been sent the checks by the bank. Thus, Chenowith had settled *this* indebtedness with Parham.

Of course, the checks were sent back to Parham by the bank through error, but, under the quoted section of the Commercial Code, this is of no aid.

As to the two smaller checks, we think without going into detail, that the appellant is liable. Succinctly, this conclusion is reached because these checks, though not paid, were not returned by the bank to Parham, and appellee accordingly remained the holder of those checks. Being the holder, it had a right to proceed against Chenowith.

In accordance with the reasoning herein set out, we hold that the court erred in not directing a verdict for appellant on the $3,800.00 and $3,000.00 checks, and the judgment is reversed to that extent. There was no error in that part of the judgment covering the $1,242.55 and $155.00 checks. The cause is therefore remanded to the Circuit Court, with instructions to enter a judgment not inconsistent with this opinion.

---

⁴Under the Uniform Commercial Code, "Part 2—General Definitions and Principles of Interpretation, [85-1-201] (20) 'Holder' means a person who is in possession of a document of title or an instrument or an investment security drawn, issued or indorsed to him or to his order or to bearer or in blank."